UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                   No. 1:23-CR-15

ARISKNIGHT ARKIN-EVERETT WINFREE,       HON. HALA Y. JARBOU
                                                                  Chief U.S. District Court Judge

    Defendant.
_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S
## SENTENCING MEMORANDUM & MOTION FOR DOWNWARD VARIANCE

Winfree has sexually assaulted women and girls since he was in high school. The Court will soon sentence him for sexually exploiting or attempting to sexually exploit four women and girls over a six-month period when he was 29 and 30. Winfree tricked S.D. into traveling from Italy to his house in Lansing to serve as an au pair. After she arrived, Winfree bound, raped, and considered killing her to hide the evidence. Shortly before that, he tricked a girl from Kansas to travel to his house as an au pair too; fortunately, her family realized she was in danger and called the police. And around this same time, Winfree produced child pornography of two high school girls.

The Guidelines and PSR writer recommend Winfree receive a life sentence. Nothing less will protect the community.

### I. The Court should overrule Winfree's objection to the care or custody enhancement.

The presentence report recommends the Court apply a 2-offense level enhancement to Winfree's Guidelines in relation to Count 3. (R.88: PSR, PageID.341.) That enhancement relates to then 18-year-old A.S., who traveled from Kansas to Michigan to serve as Winfree's au pair. (*Id.* at PageID.321-22.) Despite the fact A.S. was working for him, Winfree argues she was not under his "supervisory control." She was.

U.S.S.G § 2A3.1(b)(3) creates a 2-offense level enhancement if "the victim was [] in the custody, care, or supervisory control of the defendant." The commentary indicates this section is to be "construed broadly and includes offenses involving a victim less than 18 years of age entrusted to the defendant, whether temporarily or permanently." *Id.* at App. n.3(A).

A.S. was under the "supervisory control of" Winfree when she stayed at his house to work as his employee. A.S. flew from her home in Kansas to Winfree's residence to serve as an au pair. (R.88: PSR, PageID.321.) While there, A.S. was hundreds of miles away from her friends and family, and she had no transportation of her own. (*Id.*) During the time A.S. was with Winfree, he had her stay in a bedroom at his house, where he tried to remove her ability to lock the door. (*Id.*) He ordered her to try on swimsuits he bought. (*Id.*) He asked her to give him a back massage. (*Id.*) And he had her clean his house while he was at work. (*Id.*) In other words, Winfree treated A.S. as if she were his employee.

Winfree argues that this Guideline should only apply when the victim is a minor. (R.95: Def. Sent. Mem., PageID.437-38.) According to Winfree, because the commentary

"makes multiple references to minors… [a] more reasonable reading of the provision would limit its application to minors…." (*Id.*)

Winfree's argument lacks merit for two reasons. First, even on its own terms, the commentary does not limit the Guideline to minor victims. Indeed, it instructs the Guideline should be "construed broadly *and includes* offenses involving a victim less than 18…." U.S.S.G. § 2A3.1(b)(3), app. n.3(A) (emphasis added). But including victims under 18 does not mean the commentary excludes victims 18 or older. Indeed, that would conflict with the first instruction that the Guideline is to be "construed broadly."

Second, "where the commentary replaces, modifies, or expands the Guideline, the text alone controls." *United States v. Gibson*, 817 F. App'x 202, 204 (6th Cir. 2020). Here, the text is clear: if the victim is under the supervisory control of the defendant, the enhancement applies. Black's law defines control to include "the power or authority to manage, direct, or oversee." CONTROL, Black's Law Dictionary (12th ed. 2024). Webster's Online defines it this way: "an act or instance of controlling. *also*: power or authority to guide or manage." CONTROL, https://www.merriam-webster.com/thesaurus/control (Sept. 25, 2024). Under either definition, A.S. was under Winfree's supervisory control.

As the PSR writer notes, the Fifth Circuit applied the enhancement in a case involving an adult victim. In *United States v. Simmons*, a police officer sexually assaulted a 19-year-old girl after stopping the vehicle in which she rode. 470 F.3d 1115, 1118 (5th Cir. 2006). The defendant argued § 2A3.1(b)(3)(A) should be limited to minors. *Id.* at 1129. The Fifth Circuit held that the "Guidelines' plain language makes clear, however, §

-3-

2A3.1(b)(3)(A) is not limited to the minor/caretaker context." *Id.* There, the Fifth Circuit interpreted the 1998 version of the Guideline manual, but the applicable portion of § 2A3.1(b)(3)(A) had the same text it does today. The commentary has since changed, but even then, it included reference to "teachers, day care providers, [and] baby-sitters." *Id.* (quoting U.S.S.G. § 2A3.1(b)(3), app. n.2 (1998 version)).

As Winfree notes, even if the Court sustains his objection, the final Guideline range remains the same. (R.95: Def. Sent. Mem., PageID.438.) If the Court sustains the objection, it only impacts Count 3, which relates to A.S. The offense level for that count would be decreased from 32 to 30. (R.88: PSR, PageID.341.) Count 3 would no longer receive a unit under the multi-count adjustment, leading to a total of 3 units. (*Id.* at PageID. 343.) With 3 units, Winfree would receive 3 additional offense levels under U.S.S.G. § 3D1.4, instead of the 4 he receives now. (*Id.*) That would result in a combined adjusted offense level of 43. (*Id.*) Winfree would then receive the five-level Chapter Four Enhancement for repeat and dangerous sex offenders, leading to an adjusted level of 48. (*Id.*) After acceptance credit, his offense level would be 45, which would still be adjusted down to 43. (*Id.*)

## II.     The Court should reject Winfree's efforts to shirk responsibility for his conduct.

During his proffer and in his request for a variance, Winfree tries to blame his sexual exploitation on his former friend: Paul Heiselman. (R.88: PSR, PageID.334-37; R.94: Variance Request, PageID.422 ("[Winfree] would point the Court to the to the effects of one person: Paul Heiselman.")). But Winfree's attempt to shift the blame ignores the evidence before the Court.

First, Winfree's attempts came after he learned Heiselman had provided significant information against him. Heiselman proffered on February 7, 2023, before Winfree was indicted. (R.88: PSR, PageID.329.) Heiselman explained that Winfree had the idea to use au pair websites to find victims. (*Id.* at PageID.332.) Heiselman had little to no interaction with the girls that Winfree recruited. (*Id.* at PageID.332-33.) Heiselman explained that Winfree called after binding S.D. (*Id.*) During that call, Winfree explained he wanted to "keep her for a week," and he implied he might kill her, saying "no one would know she is gone." (*Id.* at PageID.333.) The report of that proffer was shared early with the defense in this case. Presumably after seeing it, Winfree proffered and tried to shift the blame to Heiselman. (*Id.* at 334.)

Second, the extrinsic evidence supports Heiselman's claims. The PSR reflects several messages sent between Winfree and Heiselman. (R.88: PSR, PageID.327-29.) Those messages have a theme: Winfree drives the conversation about sexual exploitation. At one point, Winfree says he is going to "slowly incept the idea in [S.D.'s] head that we are in fact a spy," implying he will do this to manipulate her. (*Id.* at PageID.327.) At another, Winfree states he "Ni more aupairs to highland." (*Id.* at PageID.329.) This appears to be a misspelling, in which Winfree claims he needs more au pairs at his house on Highland. Moreover, Winfree repeatedly complains that Heiselman is unavailable. (*Id.* at PageID.327-29.) These messages corroborate that Winfree was driving the sexual exploitation. They certainly do not show that Heiselman was somehow manipulating and controlling Winfree. And Winfree's Instagram account showed he was trying to exploit

-5-

women through it too; he directly messaged multiple female college students, lied about being a student, and tried to meet up with them. (*Id.* at PageID.326-27.)

Third, the people who interacted with Winfree made clear he was in control. A.S. explained that Winfree bought her bathing suits, asked her to give him a massage, placed video devices in her room, and tried to make sure she could not lock the door. (R.88: PSR, PageID.321-22.) She made no mention of Heiselman. (*Id.*) S.D. explained that Winfree handcuffed her, carried her around his house, and raped her in multiple rooms. (*Id.* at PageID.322-23.) She made no mention of Heiselman. (*Id.*) MV1 explained that Winfree contacted her online, picked her up from high school, took her back to his house, engaged in sex acts with her, and then harassed her when she tried to stop communication. (*Id.* at PageID.323-25.) She made no mention of Heiselman. (*Id.*) MV2 met Heiselman and engaged in sex acts with him, but both Heiselman and MV2 explained that Winfree arranged their interaction. (*Id.* at PageID.326, 331.) This was only after Winfree had solicited child pornography from MV2. (*Id.* at PageID.325-26.) And Winfree befriended a MSU student, who recalled him being "touchy" and "creepy." (*Id.* at PageID.346.) She did not mention Heiselman either. (*Id.*) Finally, a girl who attended high school with Winfree recounted that he attempted to hold her down and rape her. (*Id.* at PageID.347.) Again, no mention of Heiselman. (*Id.*)

All the available evidence before the Court indicates Winfree was responsible for his actions. The Court should sentence him as such.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests the Court deny Winfree's Guideline objection and sentence him accordingly.

                                        Respectfully submitted,

                                        MARK A. TOTTEN
                                        United States Attorney

Date:  September 26, 2024         */s/ Davin M. Reust*
                                        DAVIN M. REUST
                                        Assistant United States Attorney